IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

MARGARET M.,[1]

   Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

   Defendant.

Case No. 3:24-cv-01585-HL

**OPINION AND ORDER**

---

HALLMAN, United States Magistrate Judge:

  Plaintiff Margaret M. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability

Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

reasons, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)*.* Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

# BACKGROUND

## I.    Plaintiff's Application

Plaintiff alleges disability based on osteoarthritis, hypermobility, anxiety, depression, autism, rotator cuff tear of dominant arm, abdominal hernia, uterine prolapse, probable hypermobile Ehlers-Danlos Syndrome, flat feet with multiple surgeries, cervical spine canal and foraminal stenosis, and radiculopathy. Tr. 216.[2] At the time of her alleged onset date, she was 43 years old. Tr. 188. She has a twelfth-grade level education and past relevant work experience as a fast-food worker and a food deliverer. Tr. 217, 28.

Plaintiff protectively applied for DIB on September 29, 2021, alleging an onset date of September 15, 2020. Tr. 15, 185. Her application was denied initially on February 24th, 2022, and on reconsideration on January 6, 2023. Tr. 89, 113. Plaintiff subsequently requested a hearing, which was held on April 2, 2024, before Administrative Law Judge ("ALJ") John Loughlin. Tr. 122, 38. Plaintiff appeared and testified at the hearing, represented by counsel; vocational expert ("VE"), Kathleen Sampeck also testified. Tr. 38. On May 13th, 2024, the ALJ issued a decision denying plaintiff's claim. Tr. 12. Plaintiff requested Appeals Council review, which was denied on August 29, 2024. Tr. 1-3. Plaintiff then sought review before this Court.

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 10).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations her impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after her alleged onset date through her date last insured of September 30, 2022. Tr. 17, 226.

At step two, the ALJ determined that plaintiff has the following severe impairments: "cervical spine degenerative disc disease and spondylosis with myelopathy; lumbar degenerative disc disease, facet arthropathy, stenosis; thoracic degenerative disc disease; left shoulder degenerative joint disease with muscle tears; and bilateral hip degenerative joint disorder and sacroiliitis." Tr. 17.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. The ALJ then resolved that plaintiff had the RFC to perform less than the full range of light work, with the following limitations: "[She] can occasionally push, pull, and/or reach overhead with both upper extremities, can frequently balance, can occasionally stoop, kneel, crouch, or crawl, can occasionally climb stairs or ramps, can never climb ladders, ropes, or scaffolds, and can occasionally be exposed to vibrations." Tr. 23.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 28.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a router, price marker, and collator operator. Tr. 29. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 30.

## DISCUSSION

Plaintiff argues the ALJ committed three errors: (1) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony; (2) improperly assessing the medical opinions of Thomas Davenport, MD and Jennifer Byrne, DO[3]; and (3) failing to support the RFC with substantial evidence.

## I.    Subjective Symptom Testimony

### A.    Legal standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

---

[3] Dr. Allbright, the initial consultant, assessed occasional finger and feel limitations to the bilateral extremities. Tr. 27. The ALJ concluded this finding was not supported by the medical evidence and Plaintiff's objective presentation. *Id*. Plaintiff does not appear to challenge this finding on review. In her opening brief, Plaintiff asserts that this finding was not supported by substantial evidence, but only in the middle of a paragraph discussing Dr. Davenport's opinion. Pl. Br. 19. The Commissioner does not address Dr. Allbright's finding in response, and this Court declines to review Plaintiff's passing arguments as an independent claim of error.

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony they do not credit and explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "Indeed, our decisions make clear that we may not take a general finding—and unspecified conflict between Claimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2017) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record leads to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1273 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). "To support a lack of credibility finding, the ALJ was required to point to specific facts in the record." *Burrell*, 775 F.3d at 1138 (citing *Vazquez*, 572 F.3d at 592) (ellipses omitted).

If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas,* 278 F.3d at 959 (internal citation omitted). Therefore, the question is not whether ALJ's rationale

convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The court "may review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In practice, the court may not affirm the ALJ's conclusions based on post hoc arguments made by the Commissioner on review.

### B.    Plaintiff's Testimony.

Plaintiff completed a function report in November 2021. Tr. 232-39. She reported numbness, weakness, and difficulty using her left arm to grip with sharp nerve pain. Tr. 232. Her right arm and hand were starting to have the same problem. *Id*. Any turning in her hand caused more pain and pins and needles in her right arm. *Id*. She reported pain in her hips, and her legs hurt when sitting and standing. *Id*. Her right hand is painful and it is difficult to hold utensils. *Id*.

Plaintiff's daughter helps her with her hair sometimes. Tr. 234. She makes instant oatmeal, cereal, protein shakes, and food in the microwave. *Id*. She goes slow, but she still cannot do all her chores. *Id*. She cannot carry her laundry or the bucket for mopping. *Id*. Standing makes her back sore, and she cannot always do things with her left arm. Tr. 237.

At the hearing, Plaintiff testified that she hurt her shoulder when she was sliding books to make room on a shelf. Tr. 46. She reinjured it after she fell and tried to catch herself. *Id*. She first tried physical therapy, but the exercises caused more pain. Tr. 46. She was referred  to a neurosurgeon. *Id*. She was having problems with her hands and fingers. Tr. 47. She was in significant pain after the first surgery, and could not lift her arm past her ear. Tr. 47. After her

second surgery, she was able to reach her head, but she began having more problems with her right side. Tr. 49.

She was re-evaluated by Dr. Polin who, in May 2023, did a seven-hour "big surgery.". *Id*. She reported she was experiencing "C5 palsy" on her right side and could not move her arm at all. *Id*. She also was having pain on her left side when moving her head. *Id*. After the revision surgery, the C5 palsy wore off, and the pain was better in her arms. Tr. 50. She tried to go to physical therapy, but every exercise continued to cause so much pain and kept her awake at night, that she stopped going. *Id*. She was never able to start exercising again, and she continues to have pain in her shoulders and back. *Id*. She continues to have weakness and numbness in her thumb with no grip strength in her left thumb. *Id*.

She reported the heaviest she can lift is a jug of milk or a case of soda, estimating the weight as eight pounds. Tr. 51-52. She has difficulty pushing or pulling. She has hip and leg pain. Tr. 52. Her arms get tired quickly and she has difficulty using her hands repetitively, such as using them to type on a keyboard. Id. She has severe pain that radiates down her thigh and is worse when standing. Tr. 53. She can sit for 30 minutes if she adjusts herself. *Id*. Her hobbies include listening to music and watching videos. Tr. 54.

The ALJ found that the Plaintiff's statements were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. In reaching this conclusion, the ALJ specifically discussed the objective medical evidence, conservative treatment, and Plaintiff's activities of daily living. This Court discusses each rationale in turn:

### 1.    Objective Medical Evidence.

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

Here, the ALJ recognized that many of Plaintiff's symptoms were documented during the period at issue and supported by "notably abnormal" imaging, which is "sufficient to establish medically degenerative disorders that could be expected to cause the reported symptoms." Tr. 25. But the ALJ found that Plaintiff's treatment and presentation is "not consistent with the extreme functional loss alleged." *Id*. The ALJ relied on "some positive findings" from medical examinations, and certain medical findings that suggested "a significant degree of retained functionality." *Id*. Furthermore, in reaching these general conclusions, the ALJ cited to thousands of pages of records, across numerous exhibits. Tr. 25 (citing Ex. 2F-7F, 12F, 15F-18F, 29F, 32F, 33F, 34F, 41F, 43F)).

The ALJ's discounting of Plaintiff's symptom testimony based on the medical evidence is not supported by substantial evidence because the ALJ failed to specify which of Plaintiff's symptom testimony was not credible and what facts in the record lead to that conclusion. *See*

*Smolen*, 80 F.3rd at 1273. Stating that the objective medical evidence "is not consistent with the extreme functional loss alleged" and that it is "suggestive of greater retained physical capacity than noted" is not sufficient, particularly given the ALJ's acknowledgement that the objective evidence supports much of the functional loss alleged by Plaintiff. It is impossible to determine which aspects of Plaintiff's testimony were contradicted by evidence in the medical record, *see Carmickle*, 533 F.3d at 1161, when the ALJ failed to connect the cited evidence – which consists of thousands of pages – to Plaintiff's specific testimony. Accordingly, the ALJ's reliance on the objective medical evidence to discount plaintiff's symptom testimony was not supported by substantial evidence.

### 2. Conservative treatment.

Conservative treatment can also be a reason to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Following medical provider's recommendations cannot be considered conservative treatment when no other treatment options are offered. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discrediting for failing to pursue non-conservative treatment options where none exist."); *see also Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) ("Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'") (internal citation omitted).

The ALJ discounted Plaintiff's symptom testimony in part because she required surgical intervention "only for her cervical spine." Tr. 25. The ALJ noted that Plaintiff's other chronic pain disorders were managed non-surgically and without the use of an assistive device, which "one would expect" given the functional loss alleged. Tr. 25. But the ALJ did not specify which

additional treatment options were recommended to Plaintiff that she declined to pursue. Furthermore, the ALJ does not address Plaintiff's evidence that she deferred further surgery at the suggestions of her surgeons. Tr. 51. On this record, the ALJ cannot rely on Plaintiff's conservative treatment to reject her symptom testimony.

### 3.    Activities of daily living.

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

The ALJ cited Plaintiff's ability to "live with and provide care for her two children," including her ability to perform basic household tasks. Tr. 24. The ALJ noted that she could perform personal tasks independently "despite difficulty" and only needed assistance washing her hair. Tr. 24. However, the ALJ did not explain how those minimal activities as actually performed by Plaintiff contradicted her testimony regarding her physical limitations or translate to competitive employment. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). Accordingly, they do not provide a clear and convincing reason to reject Plaintiff's symptom testimony.

The Commissioner highlights Plaintiff's biking up to 60 miles and her daily use of an elliptical machine as contradicting her testimony concerning her physical limitations. Def. Br. at 11. Indeed, the ALJ specifically referenced those activities when finding that she had a greater retained physical capacity than she reported. Tr. 26. It is clear that such activities would

contradict Plaintiff's symptom testimony; however, the cited evidence of activity indicated that Plaintiff was engaged in regular physical activity, including biking, *before* her onset date. Tr. 488. After her fall and injury to her shoulder, Plaintiff reported that riding bikes with her children results in pain down her arm and fingers. Tr. 355. The ALJ failed to discuss how this past activity contradicts Plaintiff's relevant testimony concerning her limitations after the onset date, instead citing to thousands of pages of records in 10 exhibits. Tr. 25. Thus, the ALJ's reference to physical activity prior to the onset date does not provide a clear and convincing basis to reject the Plaintiff's symptom testimony.

## II.    Medical Opinion Evidence

### A.    Legal standards

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§404.1520c(a)-(b); 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." [4] *Kevin R. H. v. Saul*, 2021 WL 4330860, at *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.*

---

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). In evaluating the "supportability" and "consistency" of a medical opinion, the ALJ is not required to articulate how each individual medical opinion was considered. For example, where a single medical source provides more than one medical opinion, the ALJ will generally address the source's medical opinions together in a single analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). An ALJ's decision to discredit a medical opinion must be supported by substantial evidence. *Woods*, 32 F.4th at 787.

"An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. In other words, "[t]he ALJ must do more than offer his conclusions . . . [h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "Although [the reviewing court] will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning for its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2017) (internal citation and quotation marks omitted). "A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on grounds invoked by the agency." *Id.* (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

B.    **Analysis**

1.    **Dr. Davenport.**

Thomas Davenport, M.D., assessed light limitations with unlimited handling, fingering, and feeling limitations. Tr. 85. In making this determination, he referenced Plaintiff's recent cervical laminectomy in August 2021 and his understanding that Plaintiff was not diagnosed with Ehlers-Danlos syndrome. Tr. 84, 86. The ALJ generally found that these findings were "well supported internally, by discussion of and reference to the medical and non-medical evidence available at the time the state agency reviews were conducted." Tr. 27. The ALJ also found that these findings were consistent with the record as a whole, citing to hundreds of pages of medical records. *Id.*

The ALJ's generalized findings regarding Dr. Davenport were not supported by substantial evidence. The ALJ did not discuss contrary medical evidence, such as that the laminectomy failed, requiring two additional, extensive neck surgeries, and that Plaintiff was eventually diagnosed with Ehlers-Danlos syndrome. Tr. 957, 1384, 1445-46, 1671. He also did not discuss the documented evidence of paresthesia to her hands, weakness in her arms, hands, and grip, and hand pain exacerbated by movement when discussing Dr. Davenport's findings. Tr. 85. Although the ALJ was not required to assess every piece of evidence when evaluating Dr. Davenport's opinion, he could not "ignore significant probative evidence that bears on the disability analysis." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

Furthermore, the ALJ's generalized conclusions as to the medical opinion evidence, and his failure to support those conclusions with specific evidence in the record, do not allow for meaningful review. To support his conclusory statement that Dr. Davenport's findings are "consistent with the record as a whole," the ALJ cites to 19 exhibits, which total 2219 pages of records. Tr. 28 (citing Ex. 30F, 36-53F). To support his conclusory statement that Plaintiff's treatment and objective presentation on examination is consistent with the light limitation suggested by Dr. Davenport, the ALJ cites to 16 exhibits totaling 989 pages. Tr. 27 (citing Ex. 2F-7F, 10F, 15F, 18F, 25F, 27F, 29F, 33F, 34F, and 43F)). Without further guidance, either through the ALJ's reasoning or citations to the record, the Court cannot meaningfully evaluate the ALJ's conclusions.

To be sure, ALJs are not required "to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But they are required to provide a clear statement of reasoning. *See Brown-Hunter*, 806 F.3d at 492. Generalized statements of reasoning supported by hundreds of pages of medical records do not suffice. Based on this record, it is impossible for

this Court to determine why the ALJ concluded that Dr. Davenport's opinion was supported and consistent despite contrary medical evidence. Accordingly, the ALJ's conclusions regarding Dr. Davenport were not supported by substantial evidence.

### 2. Dr. Byrne.[5]

Dr. Byrne, Plaintiff's treating physician, stated that Plaintiff could grasp, turn, twist, reach, and finely manipulate items less than 5% of the time bilaterally. Tr. 888. She can walk 3-4 blocks before resting. Tr. 887. She can sit 15 minutes at a time and stand 10 minutes at a time. *Id.* She can sit less than two hours in a workday and stand/walk less than two hours in a workday. *Id.* Dr. Byrne stated she knew the patient since 2014, sees her quarterly, and thought the limitations applied since July 2021. Tr. 885, 88.

The ALJ found this opinion not persuasive, unsupported by Dr. Byrne's records demonstrating minimal, conservative treatment, and inconsistent with the record as a whole, "particularly the claimant's presentation on objective examinations through the date last insured." Tr. 28. The ALJ also concluded the opinion was inconsistent with "deferment of all more intensive treatment to specialist" and that Plaintiff had engaged in "a very conservative course" of treatment. Id. Further, because of this "deferment," Dr. Byrne had "little specialist insight into the claimant's disorders." *Id*.

Those findings were not supported by substantial evidence. The ALJ provided no explanation as to how plaintiff's course of treatment – which included multiple surgeries,

---

[5] The Commissioner does not discuss Plaintiff's challenge to the ALJ's rejection of Dr. Byrne's opinion in any detail. Def. Br. 6. Instead, the Commissioner asserts that the objections are "groundless" and "poorly discussed suggestions that because the record could support different conclusions, that meant the ALJ erred." *Id*. Plaintiff's arguments are not groundless, and the Commissioner's failure to address this issue in any detail further complicates this Court's review of this matter.

specialist visits, physical therapy, and injections – was "very conservative."  The ALJ could not

rely on Plaintiff's "very conservative" treatment in rejecting Dr. Byrne's opinion when there is

no indication that more aggressive treatment options are appropriate or available. *See Nichole K.*

*v. Saul*, No. 3:19-CV-00636-SB, 2020 WL 2393854, at *5 (D. Or. May 11, 2020). Further, it was

internally inconsistent for the ALJ to reject Dr. Byrne's opinion because of Plaintiff's

*conservative* treatment while finding that Dr. Byrne deferred more *intensive* treatment to a

specialist. Finally, the ALJ's rejection of Dr. Byrne's opinion on the grounds that she has "little

specialist insight" makes no sense. Dr. Byrne was a Plaintiff's primary care physician who saw

Plaintiff quarterly for several years. It is unclear whether the ALJ rejected her opinion because

she was not a specialist, or because she did not receive information from specialists. Either

rationale would be unsupported, however. In sum, the ALJ's rejection of Dr. Byrne's opinion

was not supported by substantial evidence.

### III.    RFC Determination

Plaintiff's final assignment of error is that the ALJ's RFC fails to account for all the

evidence. The RFC must contemplate *all* medically determinable impairments, including those

which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions

of medical providers and the subjective symptom testimony set forth by the claimant. 20 C.F.R.

§§ 404.1545, 404.1545; SSR 96–8p. In formulating the RFC, the ALJ is responsible for

resolving conflicts in the medical testimony and translating the claimant's impairments into

concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

2008). Only those limitations which are supported by substantial evidence must be incorporated

into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's arguments that the RFC failed to account for all her functional limitations are specifically tied to the ALJ's rejection of plaintiff's testimony and the ALJ's assessment of the medical opinions of record. Thus, plaintiff has not articulated an independent error here; her success rises and falls on the success of her other assignments of error, already addressed above.

## IV.    Remedy

Plaintiff asserts that this case should be remanded with instructions to the ALJ to properly determine plaintiff's limitations based on the relevant record to determine the extent of plaintiff's work-related limitations. Pl. Br. 32. This Court agrees. On remand, the ALJ must (1) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it, (2) reweigh the medical opinions and other evidence of record while providing meaningful support for their conclusions, and (3) as necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 25th day of February, 2026.

ANDREW HALLMAN
United States Magistrate Judge